**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED MERCHANDISE WHOLESALE, INC., a New York Corporation, and MY IMPORTS USA LLC, a New Jersey Limited Liability Company, | Civil Action No.: |
| Plaintiffs, | |
| vs. | |
| POINT GUARD MARKETING, INC., | **VERIFIED COMPLAINT AND JURY DEMAND** |
| Defendant. | |

Plaintiffs United Merchandise Wholesale, Inc., a New York corporation, and My Imports USA LLC, a New Jersey limited liability company, as and for their Complaint against defendant Point Guard Marketing, Inc., state the following:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action to protect their rights to their trademarks.

2.     In May 2015, plaintiffs discovered that defendant was making unauthorized sales of razors bearing plaintiffs' ULTRA MAX trademark.  These razors were not purchased from plaintiffs and defendant was not licensed or authorized to sell these goods.

3.     Defendant acknowledged that it was not authorized to sell the razors and promised to cease sales of any of goods displaying plaintiffs' trademark.

4.     Eight months later, in February 2016, plaintiffs discovered that defendant was selling winter apparel bearing My Imports' trademark INSULATED THERMO WEAR.

5.     Having been previously caught making unauthorized sales of goods bearing plaintiffs' trademarks, defendant was well aware of plaintiffs' trademarks and yet nevertheless willfully chose to sell additional infringing goods.

6. Defendant's sales infringed on My Imports' trademark and violated defendant's prior promise to cease sales of plaintiffs' trademarked goods.

7. Defendant's sale of goods bearing plaintiffs' trademarks is likely to cause confusion and has thereby damaged plaintiffs' good will in the marketplace associated with the goods bearing plaintiffs' trademarks.

8. Defendant's willful conduct must be enjoined and Defendant must be held responsible for the damages it has caused to plaintiffs through its violations of both Federal and State law.

## THE PARTIES

9. Plaintiff United Merchandise Wholesale, Inc. ("United") is a New York corporation with a principal place of business located at 11 Timber Ridge Drive, Commack, New York.

10. Plaintiff My Imports USA LLC ("My Imports") (collectively with United, "Plaintiffs") is a New Jersey limited liability company with a principal place of business located at 75 Ethel Road, Edison, New Jersey.

11. Defendant Point Guard Marketing, Inc. ("PGM") is a North Carolina corporation with a principal place of business at 1603 Parham Street, Henderson, North Carolina. PGM conducts business in New Jersey, including, but not limited to, the purchase of wholesale goods for resale in New Jersey from its place of business in North Carolina.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because of the claim asserted herein arising under the Lanham Act, 15 U.S.C. §1111, *et seq.*

13.     This Court can also exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) insofar as Plaintiffs' state law claims derive from a common nucleus of operative facts as its federal law claims and form part of the same case or controversy.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in New Jersey.

## FACTS COMMON TO ALL COUNTS

A.  The ULTRA MAX Trademark

15.     United is the owner of the registered trademark ULTRA MAX.

16.     United's ULTRA MAX trademark was registered with the United States Patent and Trademark Office on or about October 9, 2012, and bears registration number 4221706. Attached hereto as **Exhibit A** is a true and accurate copy of the Certificate of Registration issued by the United States Patent and Trademark Office.

17.     The ULTRA MAX trademark encompasses the following goods: Blades for electric razors; cases for razors; disposable razors; razor blades; razors; razors and razor blades; safety razors; and straight razors.  See Ex. A.

18.     The ULTRA MAX registration was duly and legally issued, is valid and subsisting.

19.     At all times since December 15, 2011, United has maintained its right to exercise control over the nature and quality of the goods associated with the ULTRA MAX mark.

20.     In or about April 2013, United licensed the ULTRA MAX trademark to My Imports for My Imports' use.

21.     United has maintained its right to exercise control over the nature and quality of the goods sold by My Imports under the licensed mark.

22.     Plaintiffs have made substantial monetary expenditures in advertising and promoting their ULTRA MAX razors.

B.  The INSULATED THERMO WEAR Trademark

23.     My Imports is the owner of the trademark INSULATED THERMO WEAR.

24.     The INSULATED THERMO WEAR mark is used in connection with apparel, including, but not limited to, winter hats, gloves, scarves, socks, headbands, slippers and ear muffs.

25.     The INSULATED THERMO WEAR mark was originally registered to My Import USA Inc., a New Jersey corporation that was dissolved in April 2013. My Imports was formed in 2013, shortly before the dissolution of My Import USA Inc. Prior to My Import USA Inc.'s dissolution, all of its assets, including its intellectual property, were transferred to My Imports.

26.     Though no formal assignment of the INSULATED THERMO WEAR trademark was ever filed by My Import USA Inc. with the United States Patent and Trademark Office, the owners of the two entities agreed that ownership of the INSULATED THERMO WEAR mark transferred to My Imports.

27.     In accordance with its ownership of the mark, as the successor of the mark and its business, as well as its independent use, My Imports has continuously used the INSULATED THERMO WEAR mark since the company's formation in 2013.

28.     My Imports has filed a cancellation proceeding with the United States Patent and Trademark Office Trademark Trial and Appeal Board to cancel My Import USA Inc.'s

registration of the Insulated Thermo Wear mark and instead register the mark in My Imports'
name. Attached hereto as **Exhibit B** is a true and accurate copy of the Petition for Cancellation.

C.  The AMORAY Trademark

29.    United is also the owner of the unregistered trademark AMORAY.

30.    The AMORAY mark is used in connection with various household products and
feminine hygiene products.

31.    The AMORAY mark was first used by United at least as early as March 2011.

32.    Initially, United sold products bearing the AMORAY mark in Mexico; however,
AMORAY products have been sold in the United States since at least 2013, without any third
party claim or opposition.

33.    In or about April 2013, United licensed the AMORAY trademark to My Imports
for My Imports' use.

34.    United has maintained its right to exercise control over the nature and quality of
the goods sold by My Imports under the licensed mark.

35.    Plaintiffs have made substantial monetary expenditures in advertising and
promoting their AMORAY products.

D.  The Parties' Prior Business Relationship

36.    My Imports is an importer and wholesaler of general merchandise that supplies
products to dollar stores, discount stores, and wholesalers across the United States. My Imports
sells more than 2,500 different products.

37.    My Imports operates a 120,000 square foot distribution center in Edison, New
Jersey, along with a 5,000 square foot showroom located within the distribution center.

38.     PGM is a wholesale supplier.  PGM provides discount goods to convenience stores, discount stores, drug stores, grocery stores, and other retail outlets.

39.     While PGM purchases goods from My Imports in New Jersey, until the incidents alleged in this Verified Complaint, My Imports believed that PGM did not sell its goods in New Jersey.

40.     My Imports and PGM have a longstanding business relationship whereby PGM purchases wholesale goods from My Imports for resale.

41.     PGM purchases many types of products from My Imports, including, among other things, ULTRA MAX razors, AMORAY household products, and INSULATED THERMO WEAR winter apparel.

42.     Accordingly, PGM is very familiar with My Imports' product offerings and Plaintiffs' trademarks.

E.  Defendant's Infringement of the ULTRA MAX and AMORAY Trademarks

43.     In or about April 2015, PGM purchased 167 cases of ULTRA MAX razors from Direct Containers, Inc. ("Direct").

44.     Direct, an entity owned by former members of My Imports, is principally in the business of sourcing and importing goods from China.  Until November 2015, Direct acted as My Imports' agent with regards to the purchase of goods from China.

45.     Direct is not authorized, and has never been authorized, to sell goods bearing My Imports' trademarks.  Direct is also not licensed or authorized, and never has been licensed or authorized, to use the ULTRA MAX trademark.

46.     The ULTRA MAX razors sold by Direct to PGM were not subject to inspection and quality control by Plaintiffs.  Accordingly, they are not genuine goods.

47.     On or about May 28, 2015, My Imports notified PGM that it had improperly purchased non-genuine ULTRA MAX razors from an unauthorized seller.  My Imports, on behalf of itself and United, demanded that PGM cease such unauthorized purchases immediately and provide an accounting of the quantity and items received or ordered from Direct.  Attached hereto as **Exhibit C** is a true and accurate copy of the May 28, 2015, demand.

48.     On or about June 8, 2015, PGM responded to My Imports' email stating that upon receipt of paperwork proving ownership of the trademark, PGM would provide My Imports with the requested information.  Attached hereto as **Exhibit D** is a true and accurate copy of the June 8, 2015, letter from PGM.

49.     My Imports provided PGM with proof of ownership of the ULTRA MAX mark on or about June 10, 2015.  Attached hereto as **Exhibit E** is a true and accurate copy of the June 10, 2015, email.

50.     PGM responded on June 11, 2015, stating that it would not buy any more goods bearing My Imports' trademarks from Direct.  PGM did not, however, provide the information requested by My Imports.  See Exhibit E.

51.     Having received no response to its demand for information from PGM, on June 16, 2015, My Imports again requested an accounting of the unauthorized, non-genuine goods purchased by PGM.  Attached hereto as **Exhibit F** is a true and accurate copy of an email chain between Mansur Maqsudi of My Imports and Bob Wiard of PGM dated June 16 and June 17, 2015.

52.     Ultimately, on June 26, 2015, PGM provided a spreadsheet of its purchases from Direct.  The spreadsheet revealed that, among other items, PGM had not only purchased ULTRA MAX razors from Direct but had also purchased items bearing United's AMORAY trademark.

Attached hereto as **Exhibit G** is a true and accurate copy of the June 26, 2015, email and spreadsheet from PGM.

53.     Like the ULTRA MAX razors sold by Direct to PGM, any AMORAY products sold by Direct to PGM were not subject to inspection and quality control by Plaintiffs and were therefore not genuine goods.

F.  Plaintiffs' Subpoena to Defendant[1]

54.     In connection with an arbitration currently pending between Plaintiffs and Direct, on or about February 8, 2016, Plaintiffs served PGM with a subpoena seeking records related to PGM's relationship with Direct.

55.     PGM did not respond to that subpoena, but instead, on or about February 12, 2016, filed Objections with the General Court of Justice, Superior Court Division, in Vance County, North Carolina.  Attached hereto as **Exhibit H** is a true and accurate copy of PGM's Objections to the subpoena.

G.  Defendant's Infringement on the INSULATED THERMO WEAR Trademark

56.     On or about February 2, 2016, at a Dynasty 99 Cents store located in Edison, New Jersey, representatives of My Imports discovered that PGM was selling goods bearing My Imports' INSULATED THERMO WEAR trademark.

57.     Worse, PGM had also appended its own logo to the price tag attached to the mark, creating an increased risk of confusion in the market.  Attached hereto as **Exhibit I** are true and accurate copies of photographs of winter apparel bearing the Insulated Thermo Wear mark and PGM's logo.  Attached hereto as **Exhibit J** is a true and accurate copy of a receipt for purchase

---

[1] Plaintiffs do not seek through this action to enforce the subpoena.

of winter goods bearing the INSULATED THERMO WEAR and PGM marks from Dynasty 99 Cents located in Edison, New Jersey.

58.     Two days later, on February 4, 2016, representatives of My Imports found the PGM tagged INSULATED THERMO WEAR goods also for sale at the Dynasty 99 Cents store located in Elizabeth, New Jersey.  Attached hereto as **Exhibit K** are true and accurate copies of photographs of winter apparel bearing the INSULATED THERMO WEAR mark and PGM's logo.  Attached hereto as **Exhibit L** is a true and accurate copy of a receipt for purchase of winter goods bearing the INSULATED THERMO WEAR and PGM marks from Dynasty 99 Cents located in Elizabeth, New Jersey.

59.     Dynasty 99 Cents was a regular customer of My Imports until early 2015, when, on information and belief, it started to purchase goods from Direct indirectly through PGM.

60.     On February 3, 2016, My Imports sent PGM correspondence demanding that PGM cease and desist from its infringement on My Imports' INSULATED THERMO WEAR mark.  Attached hereto as **Exhibit M** is a true and accurate copy of the February 3, 2016, correspondence.

61.     In addition, My Imports demanded that PGM:

   a.   Recall all products that bear any copies or counterfeits of any of My Imports' trademarks, including, but not limited to, any goods bearing the INSULATED THERMO WEAR mark, from any distributors, retailers, vendors or others to whom PGM has distributed or sold such products;

   b.   Cease offering, marketing, selling and/or distributing any products bearing the INSULATED THERMO WEAR trademark;

   c.   Provide My Imports with the name and address of every vendor, supplier, and/or manufacturer from which PGM obtained any goods bearing the INSULATED THERMO WEAR trademark, along with any purchase orders, invoices, shipping documents, proofs of payment, and communications associated with PGM's purchase and/or sale of goods bearing the INSULATED THERMO WEAR trademark; and

    d.  Provide My Imports with an account of all of PGM's sales of goods bearing the INSULATED THERMO WEAR trademark to date and the profits therefrom.

[*See* Exhibit M.]

62.    PGM did not respond to My Imports' February 3, 2016, correspondence.

63.    Accordingly, after numerous failed attempts to communicate via telephone, Plaintiffs' counsel emailed PGM's counsel to again demand the above information.  Attached hereto as **Exhibit N** is a true and accurate copy of an email string between Plaintiffs' counsel and PGM's counsel dated February 12, 2016, through February 26, 2016.

64.    In response, on February 26, 2016, PGM's counsel sent Plaintiffs' counsel correspondence that stated that PGM had ceased sales of the infringing product and that PGM had purchased the infringing products from Direct.

65.    Direct is not, and never has been, licensed or authorized to use the INSULATED THERMO WEAR mark.

66.    Like the ULTRA MAX razors and AMORAY products sold by Direct to PGM, the INSULATED THERMO WEAR winter apparel sold by Direct to PGM was not subject to My Imports' inspection and quality control and were therefore not genuine goods.

67.    As with its prior infringing activity, PGM did not recall the infringing products. PGM also did not provide any of the requested information.

### COUNT ONE

### (Injunctive Relief – 15 U.S.C. §1116)

68.    Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

69.     Plaintiffs' trademarks are distinctive and of incalculable value, and are associated in the public mind with the quality of Plaintiffs' goods.

70.     Plaintiffs are entitled to control the marks and the quality of the goods associated with the marks.

71.     Defendant's purchase of non-genuine ULTRA MAX razors from an unauthorized source constitutes trademark infringement.

72.     Defendant's purchase of non-genuine AMORAY goods from an unauthorized source constitutes trademark infringement.

73.     Defendant's purchase of non-genuine INSULATED THERMO WEAR goods from an unauthorized source constitutes trademark infringement.

74.     Defendant's sale of non-genuine goods bearing Plaintiffs' trademarks is likely to cause confusion that the products were genuine products sold as part of an authorized sale.

75.     Plaintiffs are entitled to injunctive relief to prevent further infringement of their rights to their trademarks.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A. The issuance of a preliminary and permanent injunction enjoining Defendant, any of its respective officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or substantial part by Defendant, who receives actual notice of the order by personal service or otherwise, from:

    (i)    Using any of Plaintiffs' trademarks, including but not limited to those identified in the Complaint above, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' trademarks in or as part of any design or logo or otherwise on or in

connection with any goods or on or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination or distribution of any goods, other than goods that are purchased from Plaintiffs;

(ii)     Using any of Plaintiffs' trademarks, including but not limited to those identified in the Complaint above, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' trademarks in or as part of any logo, business name, trade name, website identifier, website address, domain name, e-mail address or in any other means of identification;

(iii)    Processing, packaging, importing or transporting any product bearing any of Plaintiffs' trademarks or any mark that is a simulation, reproduction copy, colorable imitation or confusingly similar variation of any of Plaintiffs' trademarks, other than products that are purchased from Plaintiffs;

(iv)     Using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that the Defendant is associated with Plaintiffs or that any product imported, manufactured, distributed or sold by the Defendant is in any manner associated or connected with Plaintiffs, or is authorized, licensed, sponsored or otherwise approved by Plaintiffs;

(v)      Purchasing any of Plaintiffs' trademarks in connection with any sponsored advertising on the Internet or using any of Plaintiffs' trademarks in any source code or metatags or otherwise using Plaintiffs' trademarks such that a search for Plaintiffs on the Internet will cause any domain name, website or advertisement for Defendant, or any company or business that is owned or controlled by them, to appear in search results;

(vi)     Utilizing any of Plaintiffs' trademarks in connection with the sending of any emails, other than in connection to emails related to the sale of genuine products purchased from Plaintiffs;

(vii)    Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting any infringement of any of Plaintiffs' trademarks;

(viii)   Engaging in any activity that dilutes or tarnishes, or is likely to dilute or tarnish, any of Plaintiffs' trademarks;

(ix)     Applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting

in whole or in part of any of Plaintiffs' trademarks or consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of any of Plaintiffs' trademarks; and

(x)    Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above or taking any action that contributes to any of the activities referred to in subparagraphs (i) through (ix) above, or any other activity that consists of or contributes to the sale of counterfeit or infringing products bearing any of Plaintiffs' trademarks, including but not limited to building or creating websites for others, hosting websites for others, providing technical or other support for any e-commerce transactions that concern or relate to the sale of counterfeit or infringing goods.

B.  That Defendant be ordered to, at its own expense, immediately deliver up to Plaintiffs its entire inventory of goods bearing any of Plaintiffs' marks that were purchased from any source other than Plaintiffs.

C.  That Defendant, at its own expense, recall any and all products that bear any copies or counterfeits of any of Plaintiffs' trademarks from any distributors, retailers, vendors or others to whom Defendant has distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof upon them.

D. That Defendant deliver to Plaintiffs' attorney, within five (5) days after service of judgment with notice of entry thereof upon it, all goods, labels, tags, signs, stationary, prints, packages, promotional and marketing materials, advertisements and other materials (i) currently in its possession or under its control or (ii) recalled by the Defendant pursuant to any order of the Court or otherwise, incorporating, featuring or bearing any of Plaintiffs' trademarks or that include any simulation, reproduction, copy or colorable imitation of any of Plaintiffs' trademarks, and all plates, molds, matrices and other means of making same, and that Plaintiffs be permitted to destroy all such goods without compensation to Defendant.

- 13 -

E.  That Defendant preserve all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents, whether in electronic format or otherwise, concerning all transactions relating to their sale of any goods bearing or including any copies or counterfeits of any of Plaintiffs' trademarks or that otherwise infringe on any of Plaintiffs' trademarks, and that all such materials be made available to Plaintiffs for review, inspection and copying on Plaintiffs' request.

F.  That Defendant provide Plaintiffs with the names, addresses and all other contact information in their possession (e.g., telephone numbers, fax numbers, email addresses, etc.) for the source of all products that bear or include counterfeits or copies of any of Plaintiffs' trademarks or that otherwise are intended to copy Plaintiffs' products, including all manufacturers, distributors and/or suppliers.

G.  The Defendant shall file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after service of judgment with notice of entry thereof upon them a report in writing under oath, setting forth in detail the manner and form in which they have complied with all of the above.

H.  Awarding attorney's fees and costs; and

I.  Awarding such other relief as the Court may deem just, equitable and proper.

## COUNT TWO

### (Federal Trademark Infringement – 15 U.S.C. §1114(1))

76.    Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

77.     Plaintiffs' trademarks are distinctive and of incalculable value, and are associated in the public mind with the quality of Plaintiffs' goods.

78.     Plaintiffs are entitled to control the marks and the quality of the goods associated with the marks.

79.     Defendant's sale of ULTRA MAX razors constitutes use in commerce of a mark which is a non-genuine copy of United's federally registered mark in connection with the sale, offering for sale, distribution and advertising of competing goods and services in violation of 15 U.S.C. § 1114(1).

80.     Defendant's sale of ULTRA MAX razors is likely to cause confusion, to cause mistake or to deceive.

81.     Defendant's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Plaintiffs' rights in the ULTRA MAX mark and with intent to trade on Plaintiffs' goodwill in the ULTRA MAX mark.

82.     As a result of the foregoing alleged actions of Defendant, Defendant has been unjustly enriched, and Plaintiffs have been injured and damaged.  Unless the foregoing alleged actions of Defendant are enjoined, Plaintiffs will continue to suffer injury and damage.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.  That Defendant account for and pay over to Plaintiffs three times the profits realized by Defendant from its infringement of Plaintiffs' trademarks.

B.  That Plaintiffs be awarded monetary relief, including Defendant's profits; Plaintiffs' actual damages; trebled damages and/or increased profits as provided by 15 U.S.C. § 1117(a); and trebled profits or damages.

C. That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D. That Plaintiffs be awarded their costs in this civil action, including reasonable attorney's fees and expenses, pursuant to 15 U.S.C. § 1117(a) and other applicable laws.

E. Awarding such other relief as the Court may deem just, equitable, and proper.

### COUNT THREE

### (Federal Unfair Competition – 15 U.S.C. § 1125(a))

83.    Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

84.    Defendant's sale of razors bearing the ULTRA MAX mark, goods bearing the AMORAY mark, and apparel bearing the INSULATED THERMO WEAR mark falsely indicates that Plaintiffs or their agents are connected with, sponsored by, affiliated with, or related to Defendant and its services, or that Defendant is connected with, sponsored by, affiliated with or related to Plaintiffs.

85.    Defendant's sale of ULTRA MAX razors, AMORAY goods, and INSULATED THERMO WEAR apparel is likely to cause confusion, mistake, or deception as to the source of Defendant's goods and services.

86.    Upon information and belief, Defendant has willfully sold and is willfully selling ULTRA MAX razors, AMORAY goods, and INSULATED THERMO WEAR apparel in deliberate and complete disregard for the damage it would cause to the reputation and goodwill of Plaintiffs.

87.     Defendant's sale of ULTRA MAX razors, AMORAY goods, and INSULATED THERMO WEAR apparel allows Defendants unfairly to receive the benefit of Plaintiffs' goodwill, which Plaintiffs have established at great labor and expense, and further unlawfully allows defendants to gain acceptance of their goods and services, based not on their own qualities, but on the reputation and goodwill of Plaintiffs.

88.     The acts of Defendant complained of herein constitute unfair competition in violation of 15 U.S.C. § 1125(a).

89.     As a result of the foregoing alleged actions of Defendant, Defendant has been unjustly enriched and Plaintiffs have been injured and damaged.  Unless the foregoing alleged actions of Defendant are enjoined, Plaintiffs will continue to suffer injury and damage.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A.  That Defendant account for and pay over to Plaintiffs three times the profits realized by Defendant from its unfair competition.

B.  That Plaintiffs be awarded monetary relief, including Defendant's profits; Plaintiffs' actual damages; and trebled damages and/or increased profits as provided by 15 U.S.C. § 1117(a).

C.  That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D.  That Plaintiffs be awarded its costs in this civil action, including reasonable attorney's fees and expenses, pursuant to 15 U.S.C. § 1117(a) and other applicable laws.

E.  Awarding such other relief as the Court may deem just, equitable, and proper.

## COUNT FOUR

**(State Trademark Infringement – N.J.S.A. 56:3-13.16)**

90.     Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

91.     The acts of Defendant complained of herein constitute the use, without the consent of the owner, of an unauthorized copy of Plaintiffs' ULTRA MAX, AMORAY, and INSULATED THERMO WEAR trademarks in connection with the sale, distribution, offering for sale, and/or advertising of goods or services.

92.     Defendant's sale of ULTRA MAX razors, AMORAY goods, and INSULATED THERMO WEAR winter apparel is likely to cause confusion or mistake or to deceive as to the source of origin of the goods or services.

93.     Defendant's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Plaintiffs' rights in the ULTRA MAX, AMORAY, and INSULATED THERMO WEAR trademarks and with intent to trade on Plaintiffs' goodwill in the ULTRA MAX, AMORAY, and INSULATED THERMO WEAR trademarks.

94.     As a result of the foregoing alleged actions of Defendant, Defendant has been unjustly enriched, and Plaintiffs have been injured and damaged.  Unless the foregoing alleged actions of Defendant are enjoined, Plaintiffs will continue to suffer injury and damage.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A. That Defendant account for and pay over to Plaintiffs three times the profits realized by Defendant from its infringement of Plaintiffs' trademarks.

B. That Plaintiffs be awarded monetary relief, including Defendant's profits; Plaintiffs' actual damages; and trebled profits or damages.

C. That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D. That Plaintiffs be awarded their costs in this civil action, including reasonable attorney's fees and expenses.

E. That any bank accounts of Defendant shall be frozen pending payment to Plaintiffs as required hereunder and Plaintiffs may execute a judgment against any bank accounts of the Defendant to obtain the amounts required to be paid to Plaintiffs hereunder.

F. Awarding such other relief as the Court may deem just, equitable, and proper.

**COUNT FIVE**

**(State Unfair Competition – <u>N.J.S.A.</u> 56:4-1)**

95.     Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

96.     Defendant, through its use of the ULTRA MAX, AMORAY, and INSULATED THERMO WEAR trademarks, has appropriated for its own use trademarks, and the goodwill associated with those trademarks, owned by Plaintiffs.

97.     As a result of the foregoing alleged actions of Defendant, Defendant has been unjustly enriched, and Plaintiffs have been injured and damaged.  Unless the foregoing alleged actions of Defendant are enjoined, Plaintiffs will continue to suffer injury and damage.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A. That Defendant account for and pay over to Plaintiffs three times the profits realized by said Defendant from its unfair competition with Plaintiffs.

B.  That Plaintiffs be awarded monetary relief, including Defendants' profits; Plaintiffs' actual damages; and trebled damages as provided by N.J.S.A. 56:4-2.

C.  That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D.  That Plaintiffs be awarded its costs in this civil action, including reasonable attorneys' fees and expenses.

E.  That any bank accounts of Defendant shall be frozen pending payment to Plaintiffs as required hereunder and Plaintiffs may execute a judgment against any bank accounts of Defendant to obtain the amounts required to be paid to Plaintiffs hereunder.

F.  Awarding such other relief as the Court may deem just, equitable, and proper.

### COUNT SIX

**(State Unfair Competition – Common Law of New Jersey)**

98.     Plaintiffs repeat and re-allege each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

99.     The acts of Defendant complained of herein constitute unfair competition in violation of the common law of New Jersey.

100.    As a result of the foregoing alleged actions of Defendant, Defendant has been unjustly enriched, and Plaintiffs have been injured and damaged.  Unless the foregoing alleged actions of Defendant are enjoined, Plaintiffs will continue to suffer injury and damage.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A.  That Defendant account for and pay over to Plaintiffs three times the profits realized by said Defendant from its unfair competition with Plaintiffs.

B.  That Plaintiffs be awarded monetary relief, including Defendants' profits; Plaintiffs' actual damages; and trebled damages.

C.  That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

D.  That Plaintiffs be awarded its costs in this civil action, including reasonable attorneys' fees and expenses.

E.  That any bank accounts of Defendant shall be frozen pending payment to Plaintiffs as required hereunder and Plaintiffs may execute a judgment against any bank accounts of Defendant to obtain the amounts required to be paid to Plaintiffs hereunder.

F.  Awarding such other relief as the Court may deem just, equitable, and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.


**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Attorneys for Plaintiff


By:___/s/ Louis A. Modugno_____
Louis A. Modugno

Dated:  April 20, 2016

## VERIFICATION

Fahim Ibrahimi, of full age, being duly sworn according to law, upon his oath deposes and says:

1.      I am the General Manager of United Merchandise Wholesale, Inc. and the President of My Imports USA LLC, and am authorized to make this verification on their behalf.

2.      The allegations set forth in this Verified Complaint are true to the best of my personal knowledge except as to those allegations which are made upon information and belief.

3.      As to the allegations made upon information and belief, I believe those to be true.

Dated: April 20, 2016